*36 opinion.
Leech:
Petitioner contends, in substance, that it borrowed from the bank and loaned the money to Smith, which loan was secured by collateral, part of which had been originally pledged with the bank on Smith’s loan there, and that Smith used the proceeds of this loan from petitioner to pay his indebtedness to the bank. Petitioned *37 then argues it properly ascertained the then balance owing on this loan to have become worthless in 1984 and charged it off as a bad debt.
Respondent counters with the argument that petitioner bought the Smith note and collateral thereto but that, if this is not so, and petitioner did become a creditor of Smith by the transaction of the bank, the debt was worthless and reasonably ascertainable as such before 1934.
We agree with petitioner. After a thorough consideration of the evidence, we think that petitioner never acquired full legal title to the Smith note to the bank or the collateral securing it. Petitioner became a creditor of Smith and this collateral secured that debt. Kessler, petitioner’s president, testified that he held title to the collateral, consisting of Petroleum stock and Nash Motors stock, only as trustee for the liquidation of Smith’s account. The agreement between Smith and Kessler stated not that Smith assigned these securities to Kessler, but that he would leave- them with Kessler to be sold to liquidate the obligation when, as, and if necessary. It is true that when petitioner took over the obligation from Kessler, the transaction was entered on its books three times as a purchase of the stocks comprising the collateral. But Kessler testified that this was done without his knowledge or authority, while he was away, and by a bookkeeper who did not know how to record the transaction. Respondent introduced no evidence to rebut this explanation except the entries themselves. On the third entry made without Kessler’s knowledge it is expressly stated that the stock was held only as collateral on Smith’s note account.
The allegedly mistaken entries were corrected by Kessler’s order as soon as he learned of them, and this was done in December of 1933, prior to the taxable year. We are satisfied that the correction, which changed petitioner’s records to show that the stocks were held and one of them disposed of only as pledged collateral, was made in good faith. The evidence independent of the book entries shows clearly that a pledge, rather than an outright transfer, of the securities took place, and the book entries can not control where they conflict with the actual facts. Doyle v. Mitchell Brothers Co., 247 U. S. 179; San Joaquin Light & Power Co. v. McLaughlin, 65 Fed. (2d) 677; Ohio Brass Co., 17 B. T. A. 1199.
Respondent insists that petitioner knew Smith was insolvent in 1931, having charged off a debt of his in that year as worthless, and that the bad debt deduction, if such it was, should have been taken in that year. In support of this he cites Dexter v. Commissioner, 99 Fed. (2d) 769. But this argument is beside the point, the Smith note account was at all times secured by collateral, which was not the case in Dexter v. Commissioner, where the notes in question were wholly unsecured.
*38 It may be conceded that petitioner could have reasonably ascertained a part of the Smith debt to have become worthless prior to 1934, but a partial charge-off is not compulsory under the act. Revenue Act of 1934, sec. 23 (k). It may be true that neither Smith’s asset position nor his worth as a debtor improved substantially between 1931 and 1934. It may likewise be true that the value of the collateral did not appreciate during that interval. However, on this record we can not say the basis for a reasonable expectation that such appreciation would occur did not exist throughout that period. And, in any event, the total worthless amount of the debt could not have been ascertained until the disposition and liquidation of the collateral, including the Lucey Products note. This did not occur until 1934, when that note was paid and the stock in petitioner was taken over by petitioner and Smith’s account credited with its par value, which then exceeded its market value — under the contract of June 16,1931. There is nothing in this record indicating that the petitioner was accumulating bad debts to deduct them in a year subsequent to the year of their becoming worthless, as was true in Avery v. Commissioner, 22 Fed. (2d) 6. We have, therefore, found as a fact that petitioner properly ascertained a debt to it in the sum of $17,198.07 to have become worthless in 1934 and charged the same off in that year. It is entitled to that deduction. Fidelity Storage Corporation v. Burnet, 58 Fed. (2d) 526; Alfred K. Nippert et al., Executors, 32 B. T. A. 892.

Decision will be entered for the petitioner.